# United States Tax Court

T.C. Memo. 2025-8

ANA M. FRANKLIN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket Nos. 15054-21, 4970-22.                    Filed January 22, 2025.

_____

*William P. Gray, Jr.*, for petitioner.

*Donielle A. Holmon*, *Martha J. Weber*, and *Christopher D. Bradley*, for respondent in Docket No. 15054-21.

*Donielle A. Holmon*, for respondent in Docket No. 4970-22.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, *Judge*: In these consolidated cases respondent determined, by separate Notices of Deficiency, deficiencies in petitioner's federal income tax for 2015 and 2018. By notice dated May 13, 2021 (2015 Notice), respondent determined a deficiency of $46,079 and an addition to tax pursuant to section 6651(a)(1)[1] for failure to timely file of $11,948.50 for petitioner's 2015 tax year. By notice dated January 25, 2022 (2018 Notice), respondent determined a deficiency of $15,900 and an accuracy-related penalty pursuant to section 6662(a) he now concedes.

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** After respondent's concession and allegations raised in the pleadings, *see infra* Findings of Fact Part VI.C, the following issues remain for decision:

1. Whether petitioner received unreported income of $155,000 for 2015 and, if so, whether the $155,000 should have been reported as "other income" or as gross receipts from a trade or business;

2. Whether petitioner is entitled to a net operating loss (NOL) carryback of $18,956 for 2015;

3. Whether petitioner is liable for the section 6651(a)(1) addition to tax for failure to timely file for 2015;

4. Whether petitioner was engaged in a trade or business, other than the trade or business of being an employee, during 2018;

5. Whether $44,967, reported as gross receipts on Schedule C, Profit or Loss From Business, for 2018 should have been reported as "other income";

6. Whether petitioner is entitled to a deduction of $44,967 for legal and professional services expenses for 2018.[2]

FINDINGS OF FACT

I. *Background*

Petitioner resided in Alabama when she filed each of the Petitions.

Petitioner was elected Sheriff of Morgan County, Alabama, in 2010. She assumed the office in January 2011 and, after being re-elected in 2014, remained in that role until the end of her second term in 2019. While serving as sheriff, petitioner received wages from the Morgan County Commission, which reported those wages on Form W–2, Wage and Tax Statement.

---

[2] Respondent's adjustments to self-employment tax and the self-employment tax deduction are computational.

[*3] II.   *Sheriff of Morgan County*

Among her other responsibilities as Sheriff of Morgan County, petitioner had an obligation to see that the inmates in the county jail were properly fed. During the years at issue Alabama law mandated that sheriffs of counties in Alabama had a duty to feed the prisoners held in their respective county jails.[3] *See* Ala. Code § 14-6-40 (1995) (amended 2019). By statute, the State of Alabama provided a monthly allowance of $1.75 per inmate per day, along with additional amounts conditionally approved, as well as a food services allowance, determined by the number of prisoners in the county jail, for the sheriff's services in preparing and serving food.[4] *See* Ala. Code §§ 14-6-42, 14-6-43 (1995) (amended 2019). Historically, unless otherwise directed by the county commission, the sheriff was permitted to keep and retain any surplus funds that remained after feeding the prisoners. *See* Ala. Code § 36-22-17 (1995) (amended 2019). The sheriff's obligation to adequately feed prisoners remained, however, whether or not the amounts provided by the state were sufficient, and the sheriff would be responsible to cover any shortfall in funds.

III.   Maynor v. Morgan County

In 2001, before petitioner's election as sheriff, a class of pretrial detainees confined in the Morgan County Jail filed a class action lawsuit against Morgan County and various county, state, and jail officials, alleging inhumane treatment and conditions of confinement. *See Maynor v. Morgan County*, No. 01-cv-00851 (N.D. Ala. filed Apr. 5, 2001). The parties settled the dispute and, on September 25, 2001, agreed to a Consent Decree requiring the defendants in that case to enact a number of reforms to the county prison system. *Id.* Among the reforms agreed to in the Consent Decree, Paragraph 22 required that "County Defendants shall provide a nutritionally adequate diet to

---

[3] Following the years at issue in these cases, efforts were made to reform the feeding of prisoners in Alabama. In July 2018 Governor Kay Ivey issued a memorandum to the Alabama State Comptroller directing that payments related to the feeding of prisoners no longer be paid directly to the sheriffs personally. *See* Memorandum From Gov. Kay Ivey to State Comptroller Kathleen Baxter, Sheriff's Food Service Allowance (July 10, 2018). In 2019 the Alabama legislature amended the statutes relating to feeding prisoners to, among other changes, increase the per capita allowances, alleviate the sheriffs' personal responsibility for costs, and restrict the use of the funds. *See* Ala. Code §§ 14-6-40 through 14-6-51.

[4] The federal government provides a separate allowance for federal inmates housed in county jails. Petitioner testified that in the years at issue, the allowance was approximately $5 per prisoner per day.

[*4] inmates." Consent Decree Applicable to the Plaintiff Class and the County Defendants, *Maynor*, No. 01-cv-00851 (N.D. Ala. Sept. 25, 2001), ECF No. 45.

In November 2008 a court-ordered investigation into alleged violations of Paragraph 22 revealed that petitioner's predecessor in office had, among other things, served corn dogs as a diet staple at each meal for several months running, while profiting substantially from the jail food allowance.[5] The court found that petitioner's predecessor had willfully violated the Consent Decree by consistently failing to provide a nutritionally adequate diet to inmates and that petitioner's predecessor had converted to his personal use and benefit state and federal funds allocated for the feeding of class members. He was held in contempt and subsequently jailed.

The contempt charge was eventually purged after petitioner's predecessor agreed to amend certain provisions of the Consent Decree, including Paragraph 22. The terms of Amended Paragraph 22(a)(i) provided, in relevant part, that the Sheriff of Morgan County

> shall immediately establish and implement a procedure whereby all funds provided by any source for the feeding of inmates, including funds from the State of Alabama, any municipality, and the federal government, will be used exclusively for the feeding of said inmates incarcerated in the Morgan County Detention Facility.

Order Granting Motion for Modification and Clarification of Consent Decree, *Maynor*, No. 01-cv-0851 (N.D. Ala. Jan. 27, 2009), ECF No. 104. Amended Paragraph 22 further provided: "For any year in which there is a shortfall in funds to provide meals for inmates in the County Jail, the Sheriff will not be responsible for the shortfall in funds." *Id.* A footnote to the amendment stipulated that the court makes no determination as to whether the Morgan County Commission would be liable for any potential shortfall, leaving determination of that question for another day. *Id.*

---

[5] According to court filings, the former sheriff purchased an 18-wheeler truck full of corn dogs for $500 from a friend who owned a trucking company and had been unable to sell them. The former sheriff served the corn dogs to inmates at each meal until they had been depleted.

**[\*5]** IV.    *Jail Food Money Account*

A.    *Establishment of Account*

Petitioner entered office in January 2011. Upon entering office, petitioner consulted with the Alabama State Sheriffs Association and with state attorneys regarding her responsibilities with respect to feeding the prisoners. On the basis of her discussions, petitioner concluded that the terms of Amended Paragraph 22 applied specifically to her predecessor, while the original Consent Agreement, which had been agreed to by the county, was still effective as to her.

With the understanding that she was personally responsible for feeding the prisoners detained in the county jail, petitioner undertook to set up accounts with food vendors and establish a line of credit under her own name and Social Security number. Petitioner additionally gained signatory authority over a checking account at People's Bank ending x2933 (jail food money account), into which the State of Alabama and the federal government deposited the monthly jail food funds. The People's Bank account ending x2933 was used exclusively for the jail food money.[6] When petitioner assumed office, the outgoing sheriff left only "a nominal amount of money" in the jail food money account, but it was insufficient to cover even the cost of the first month's food.

B.    *Priceville Partners*

Throughout petitioner's first term in office, she and her staff managed to feed the prisoners with the funds provided by the state and federal government. Some months, the allowances would exceed the cost of food, while other months, there would be a deficit. Over time, however, the balance carried over each month gradually increased, and by January 2015, the account balance was $224,415.97.

When petitioner entered office in 2011, the average daily population of the county jail was approximately 250 inmates, 40 of whom were federal inmates (and thus received the $5 per day food allowance). In the years that followed, however, the county jail population increased, driven by a variety of factors, including an increase in methamphetamine arrests, changes to Alabama sentencing laws, and the closure of municipal jails within Morgan County and the

---

[6] Petitioner's salary and the food services allowance, which was paid to petitioner personally, were deposited into a separate account. Petitioner reported these amounts on her returns for the years at issue, and respondent has not challenged them.

**[\*6]** rehousing of those inmates in the county jail. By 2015 the Morgan County Jail housed between 450 and 500 inmates per day, and the number was projected to continue rising. At the same time, the population of federal inmates remained relatively consistent.

From January 1 to June 1, 2015, petitioner's office ran deficits in the jail food money account in three of the five preceding months.[7] During that time, petitioner had begun to investigate avenues to subsidize the jail food money account. On June 5, 2015, petitioner withdrew $160,000 from the jail food money account using two cashier's checks. The cashier's checks were for $150,000 and $10,000, and both were made payable to petitioner.

Petitioner opened a checking account at Traditions Bank in the name Ana Franklin, Food Money, and deposited $5,000 of the $10,000 cashier's check into the Traditions Bank account. She cashed the remaining $5,000 and kept the money in the office safe as petty cash.

Petitioner had been approached with a short-term investment proposal. On the recommendation of Steve Ziaja, a Morgan County police officer and petitioner's boyfriend at the time, petitioner would lend the $150,000 to Priceville Partners, LLC, a local used car dealership and title-pawn lending service, with the expectation of a 17% interest rate and a promise that the funds would be returned in 30 days. Mr. Ziaja had also invested in Priceville Partners and convinced petitioner that it would be a good opportunity to recoup some of the losses on the jail food money account. Mr. Ziaja offered to serve as guarantor for the loan. Petitioner endorsed and delivered the $150,000 cashier's check directly to Priceville Partners.

Priceville Partners did not immediately provide petitioner with a promissory note for the loan, and petitioner's efforts to obtain one were met with excuses and evasion. After the prescribed 30 days had passed, petitioner received neither her principal nor the promised interest. The owner of Priceville Partners stopped answering petitioner's phone calls, and petitioner soon learned that the company had been operating what

---

[7] Petitioner testified that monthly deficits began to be more common in the latter half of 2014, but the parties did not introduce bank statements or other records to corroborate or dispute this assertion.

**[*7]** was essentially a Ponzi scheme. The business closed in November 2015, and Priceville Partners filed for bankruptcy in March 2016.[8]

Petitioner never received any funds from Priceville Partners or the bankruptcy estate. In December 2016 Mr. Ziaja, having served as personal guarantor for the loan to Priceville Partners, repaid the $150,000 to petitioner on behalf of Priceville Partners. Petitioner deposited the funds in the Traditions Bank account on December 30, 2016.

## V. *Violation of Consent Decree*

In January 2017 representatives of the class members in the *Maynor* suit learned that the $160,000 had been removed from the jail food money account and subsequently filed a motion seeking to hold petitioner in contempt for violating the Amended Paragraph 22 of the Consent Decree. On June 15, 2017, the court found that, by removing the $160,000 from the jail food money account, petitioner violated the terms of the Consent Decree. The court held petitioner in civil contempt but, because the funds had been returned before the plaintiffs' motion, determined that a coercive sanction was unnecessary and imposed a nominal fine of $1,000. In addition the Court found that Amended Paragraph 22(a)(i), the provision which specifically restricted the Morgan County Sheriff's use of the funds in the jail food money account, was no longer required and granted petitioner's motion to terminate that provision.

## VI. *Tax Returns and Notices of Deficiency*

### A. *2015 Tax Return*

On December 18, 2017, petitioner filed Form 1040, U.S. Individual Income Tax Return, for tax year 2015. On that return petitioner reported wages of $63,930; taxable interest of $15; and other income totaling $4,832, which comprised $4,106 in payments from the State of Alabama and $726 total canceled debt. Petitioner claimed itemized deductions totaling $7,010 and a personal exemption, resulting in taxable income of $57,477 and total tax of $10,743. Petitioner did not

---

[8] The parties stipulated that Priceville Partners filed for bankruptcy on March 25, 2015. The bankruptcy petition, however, shows a filing date of March 25, 2016. The Court may disregard the parties' stipulation to remedy obvious error. *See, e.g., Joseph v. Commissioner*, T.C. Memo. 2020-65, at *30.

[*8] report any income in connection with the withdrawal of funds from the jail food money account.

On December 18, 2018, following a lengthy investigation, the U.S. Department of Justice filed an Information against petitioner on charges of willful failure to file a tax return for tax year 2015, in violation of section 7203.[9] Information, *United States v. Franklin*, No. 18-cr-00605 (N.D. Ala. Dec. 18, 2018), ECF No. 1. That same day, petitioner pleaded guilty to the charges. Plea Agreement, *Franklin*, No. 18-cr-00605 (N.D. Ala. Dec. 18, 2018), ECF No. 2. On October 18, 2019, petitioner was sentenced to probation for a term of 24 months. Judgment in Criminal Case, *Franklin*, No. 18-cr-00605 (N.D. Ala. Oct. 18, 2019), ECF No. 31.

### B. *2018 Tax Return*

Petitioner timely filed her 2018 tax return. On her 2018 return petitioner reported wages of $67,900; taxable refunds, credits, or offsets of state and local income taxes of $81; and other income of $2,385. Petitioner claimed a deduction of $169 for self-employment tax and a standard deduction of $12,000, resulting in taxable income of $58,197 and total tax of $9,075, including self-employment tax of $337.

Petitioner's return included Schedule C, on which petitioner listed her business as "Sheriff's Jail Food Account." On the Schedule C, petitioner reported gross income of $44,967 and a legal and professional services expense of $44,967, resulting in zero net profit. The $44,967 represented funds that petitioner withdrew from the jail food money account during 2018[10] and paid to various parties to resolve her ongoing legal and tax issues.

Petitioner paid $10,867 to the accounting firm Tucker, Scott, & Wates, LLC, for preparation of her tax returns for 2017 and amended returns for 2011, 2012, 2014, 2015, and 2016, as well as bookkeeping related to the jail food money account, meetings with the Alabama Department of Revenue, and meetings with her attorneys in connection with the federal investigation. Petitioner paid $16,600 to a law firm for preindictment representation during her federal investigation and

---

[9] Petitioner filed her 2015 tax return on December 18, 2017, after having received notice of the investigation.

[10] The restriction limiting petitioner's use of the funds exclusively to feeding inmates was terminated on June 15, 2017. Order, *Maynor*, No. 01-cv-851 (N.D. Ala. June 15, 2017), ECF No. 169.

**[\*9]** $17,500 to a different law firm for representation during her criminal tax investigation. Petitioner reported no other income or expenses on her Schedule C.

### C.  *Notices of Deficiency*

On May 13, 2021, respondent issued the 2015 Notice, determining a deficiency of $46,079 and an addition to tax for failure to file pursuant to section 6651(a)(1) of $11,948.50. Respondent's deficiency determination was based on the following adjustments:

| Adjustment | Amount |
|---|---|
| NOL Carryback from tax year 2016 | ($18,956) |
| Sch C1 – Gross Receipts (Food Account) | 155,000 |
| SE AGI Adjustment | (5,224) |
| Total Adjustments | 130,820 |

Petitioner timely filed a Petition, docketed at No. 15054-21, on July 19, 2021, disputing the adjustments to her income.

On July 7, 2022, after a series of jurisdictional motions were resolved, respondent filed his Answer in the case docketed at No. 15054-21 (2015 Answer). In the 2015 Answer respondent substantially modified his position from the 2015 Notice and alleged the $155,000 adjustment to petitioner's Schedule C gross receipts set forth in the 2015 Notice should have been classified as other income under section 61. Respondent now alleges that petitioner did not operate a business for feeding prisoners in 2015 and that the $155,000 constituted proceeds from embezzlement. Accordingly, respondent now contends that petitioner is not entitled to the NOL carryback allowed in the 2015 Notice. Respondent further contends that the $155,000 adjustment to petitioner's income is not subject to self-employment tax. With these adjustments, respondent now contends that the 2015 proposed deficiency is slightly reduced in that the 2015 deficiency is $43,562 and the section 6651(a)(1) addition to tax is $11,319.25.

On January 25, 2022, respondent issued the 2018 Notice. In the 2018 Notice respondent determined a deficiency of $15,900 and an accuracy-related penalty pursuant to section 6662(a) of $3,180. Petitioner timely filed a Petition, docketed at No. 4970-22, on March 15, 2022.

**[\*10]** Respondent filed the Answer in Case No. 4970-22 on July 6, 2022. On October 31, 2022, the Court granted respondent's Motion for Leave to File Out of Time First Amendment to Answer. In the First Amendment to Answer, respondent alleged, in conformity with the allegations in the 2015 Answer, that petitioner did not operate a Schedule C business during 2018 and is not subject to self-employment tax. In so alleging, respondent additionally reclassified petitioner's disallowed business expenses as disallowed employee-related expenses. With these adjustments, respondent now contends that the 2018 Notice amount is also reduced in that the deficiency for petitioner's 2018 tax year is $10,311.[11]

These cases were consolidated for trial, briefing, and opinion on December 12, 2022.

## OPINION

I.     *2015 Adjustments*

    A.     *Unreported Income*

        1.     *Burden of Proof*

The Commissioner's determination set forth in a notice of deficiency is generally presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). With respect to any new matter or increases in deficiency pleaded in an answer, the burden is on the Commissioner. Rule 142(a)(1). When a case involves unreported income, the U.S. Court of Appeals for the Eleventh Circuit, to which appeal in these cases would lie, absent a stipulation to the contrary, *see* § 7482(b)(1)(A), (2), has held that the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the determination is supported by a minimal evidentiary foundation linking the taxpayer to an income-producing activity, *see Blohm v. Commissioner*, 994 F.2d 1542, 1549 (11th Cir. 1993), *aff'g* T.C. Memo. 1991-636. Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the presumption of correctness applies and the burden of production shifts to the taxpayer to rebut that presumption by establishing that the Commissioner's determination is arbitrary or erroneous. *Id.*

---

[11] Respondent subsequently conceded the section 6662(a) penalty.

**[*11]** In the 2015 Notice respondent determined that the $155,000 that petitioner withdrew from the food money account constituted unreported gross receipts from a trade or business. In the 2015 Answer respondent now alleges that the funds were income from embezzlement (and thus not income from a trade or business).[12]

The parties agree that petitioner withdrew the $155,000 at issue from the jail food money account. Respondent has therefore established the minimal evidentiary foundation, and the burden is on petitioner to show that respondent's determination is arbitrary or erroneous. Whether the funds constitute embezzlement income and not income from a trade or business, however, is a new matter for which respondent bears the burden of proof.

2. *Analysis*

Section 61(a) defines gross income as "all income from whatever source derived." Gross income is construed broadly to include all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955). It is well established that gross income under section 61(a) includes income earned from illegal activity, such as proceeds from embezzlement. *James v. United States*, 366 U.S. 213, 219 (1961); *Howard v. Commissioner*, T.C. Memo. 1997-473, 1997 WL 634517, at *3. Loan proceeds, on the other hand, are excluded from gross income because the benefit of income is offset by a corresponding obligation to repay. *See, e.g., Todd v. Commissioner*, T.C. Memo. 2011-123, 2011 WL 2183767, at *4, *aff'd*, 486 F. App'x 423 (5th Cir. 2012).

Respondent argues that, by withdrawing the $155,000 from the jail food money account, petitioner committed an act of embezzlement,

---

[12] Respondent's classification of the $155,000 as income from embezzlement activities, rather than income from a trade or business, carries certain significant consequences. For instance, section 1401 imposes a tax on self-employment income, and section 1402(a) defines net earnings from self-employment as the gross income derived by an individual from the carrying on of any trade or business by such individual less allowable deductions attributable to such trade or business. Additionally, section 172(d)(4) limits the availability of NOLs not attributable to a trade or business to certain listed exceptions, none of which is relevant to the present cases. The Court has long held that embezzlement activities do not constitute a trade or business. *See, e.g., Yerkie v. Commissioner*, 67 T.C. 388 (1976). If the Court were to find in respondent's favor, then petitioner would not be liable for the adjustment to her 2015 self-employment tax, but likewise not be entitled to carry back the loss arising when she returned the funds to the jail food money account in 2016.

**[\*12]** misappropriating funds from the jail food money account and converting those funds for personal use in violation of Alabama law and the Amended Paragraph 22 of the Consent Decree. Respondent argues that, upon withdrawing the funds, petitioner had an undeniable accession to wealth, derived realized economic value, and exercised completed dominion and control over the funds.

Petitioner maintains that she did not embezzle the funds, but that they were a loan from the jail food money account, which she withdrew with the intention of repaying them with interest when she herself was repaid by Priceville Partners. Petitioner points to the fact that, as signatory authority on the jail food money account, she always had dominion and control over the funds in the account, and that she received no accession to wealth when she withdrew the funds because she created a corresponding obligation to repay the funds and that she ultimately did repay them.

While it is true that, under the terms of Amended Paragraph 22 of the Consent Decree, petitioner was not authorized to use the funds in the manner that she did, the Court has long distinguished between unauthorized loans and embezzlement. A taxpayer has income when she "acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition." *James*, 366 U.S. at 219. In circumstances where misappropriations do not enrich or benefit the misappropriator, and there is a consensual recognition of an obligation to repay the funds, income does not arise. *Hobson v. Commissioner*, T.C. Memo. 1992-312, 1992 Tax Ct. Memo LEXIS 334, at \*8; *see also Beasley v. Commissioner*, T.C. Memo. 1989-173, 1989 Tax Ct. Memo LEXIS 176, at \*49–50.

For genuine indebtedness to be present, there must be a good-faith intent on the part of the borrower to repay the debt and good-faith intent by the lender to enforce payment of the debt. *Todd v. Commissioner*, 2011 WL 2183767, at \*4. Factors considered in finding a bona fide debt include whether the promise to repay was evidenced by a note or other instrument; interest was charged; a fixed schedule for repayment was established; collateral was given to secure payment; repayment was made; the borrower had a reasonable prospect of repaying the loan and the lender had sufficient funds to advance the loan; and the parties conducted themselves as if the transaction was a loan. *Id.* Ultimately, the distinguishing characteristic of a loan is the intention of the lender and borrower that the loan be repaid. *Moore v.*

**[\*13]** *United States*, 412 F.2d 974 (5th Cir. 1969); *Roberts v. Commissioner*, T.C. Memo. 1993-98, 1993 WL 80581, at \*8.

On the basis of the evidence, the Court is persuaded that the withdrawn funds constituted a loan from the jail food money account. Although petitioner's withdrawal of the funds failed to adhere to certain formalities as a written instrument, the lack of such formalities is not by itself conclusive. *See Kean v. Commissioner*, 91 T.C. 575, 595–96 (1988). Petitioner credibly testified, and her testimony was corroborated by that of Mr. Ziaja and others, that she was concerned about the long-term viability of the jail food money account. On the promise of a 17% return within 30 days, petitioner withdrew the funds from the jail food money account by cashier's check and immediately signed the cashier's check over to Priceville Partners. Other members of the Morgan County Sheriff's staff had access to the jail food money account, yet there is no indication that petitioner undertook any effort to hide the withdrawal of the funds from them or otherwise conceal her actions. Petitioner may have exhibited poor business judgment, both in withdrawing the funds and in lending them to Priceville Partners, but petitioner's poor judgment is not a factor in determining her intent.

The fact that the withdrawal was made in violation of the Consent Decree does not alter the fact that petitioner intended to (and ultimately did) return the funds to the jail food money account. *Cf. Hobson*, 1992 Tax Ct. Memo LEXIS 334, at \*12. Petitioner was never charged with, much less convicted of, embezzlement or theft of the funds. Rather, the court in *Maynor* ruled that petitioner was not authorized to use the funds in the manner she did. Rather, observing that the withdrawn funds had in fact been restored, the court held petitioner in civil contempt but ordered only a nominal sanction of $1,000 against her for her actions.[13]

Accordingly, the Court holds that the $155,000 withdrawn from the jail food money account constituted an unauthorized loan and not embezzlement income. Because the withdrawal was an unauthorized loan, petitioner's restoration of the funds in 2016 constituted a loan repayment, rather than a repayment of embezzled funds, and petitioner is not entitled to an NOL carryback for 2015. *See, e.g.*, *Porter v. Commissioner*, T.C. Memo. 2015-122, at \*32 ("[A taxpayer] is not

---

[13] In the same order, the court terminated Amended Paragraph 22(a)(i) of the Consent Decree, which imposed the limitations on the Sheriff's use of the jail food funds. Order, *Maynor*, No. 01-cv-851 (N.D. Ala. June 15, 2017), ECF No. 169.

[*14] entitled to deduct repayment of loan principal because loan proceeds are not income when they are received.").

### B.    *Addition to Tax*

Section 6651(a)(1) imposes an addition to tax for failure to timely file a federal income tax return unless it is shown that the failure is due to reasonable cause and not due to willful neglect. *See also Higbee v. Commissioner*, 116 T.C. 438, 447 (2001). The addition to tax is equal to 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent. § 6651(a)(1). Under section 7491(c) the Commissioner bears the burden of producing evidence with respect to the liability of the taxpayer for any addition to tax. *See Higbee*, 116 T.C. at 446–47. The burden of proving reasonable cause and lack of willful neglect falls on the taxpayer. *See* § 6651(a); *Higbee*, 116 T.C. at 446–47.

Petitioner filed her 2015 income tax return on December 18, 2017, which was after the due date of April 18, 2016. *See* §§ 6072, 7503. Respondent has thus met his burden of production. Petitioner has not established that her failure to timely file was due to reasonable cause and, indeed, she pleaded guilty to willful failure to file a tax return for 2015. Accordingly, to the extent that any underpayment remains, the section 6651(a)(1) addition to tax is sustained for 2015.

## II.    *2018 Adjustments*

### A.    *Overview*

On Schedule C attached to her 2018 tax return, petitioner reported gross income of $44,967, which she withdrew from the jail food money account. Petitioner also reported legal and professional services expenses of $44,967, comprising $10,867 paid to her accountant for the preparation of her personal tax returns for 2011, 2012, 2014, 2015, 2016, and 2017, among other services, and the remaining amount paid to attorneys in connection with her criminal tax case.

In the 2018 Notice respondent disallowed the deductions because petitioner did not establish that the expenses were paid or incurred during the taxable year or that she operated a trade or business during 2018. Respondent now argues that petitioner did not carry on a trade or business during 2018, and that the $44,967 should have been reported as other income. Under that characterization, petitioner would no longer

**[\*15]** be liable for the adjustments to her self-employment tax with respect to the $44,967.

With respect to the legal and professional services expense, respondent now agrees that amounts were paid, but that they were either nondeductible personal expenses or miscellaneous itemized deductions, deduction of which was suspended for 2018 pursuant to section 67(g).

### B.    *Petitioner's Trade or Business*

As a threshold matter, the Court must first determine whether petitioner's operation of the jail food money account constituted a distinct trade or business. Neither the Code nor the regulations provide a generally applicable definition of a "trade or business." *Commissioner v. Groetzinger*, 480 U.S. 23, 27 (1987). Determining the existence of a trade or business requires an examination of the facts in each case. *Id.* at 36; *see also Sestak v. Commissioner*, T.C. Memo. 2022-41, at \*7. When examining the facts of each case to determine whether a trade or business exists, the Court has focused on whether: (1) the taxpayer undertook the activity intending to earn a profit; (2) the taxpayer is regularly and actively involved in the activity; and (3) the taxpayer's activity has actually commenced. *See, e.g.*, *Sestak*, T.C. Memo. 2022-41, at \*7; *Weaver v. Commissioner*, T.C. Memo. 2004-108, 2004 WL 938293, at \*6.

During 2018 petitioner was an employee of the Morgan County Commission, which paid her wages for her service as sheriff. Among petitioner's statutory duties in her position as sheriff was to feed the prisoners held in the Morgan County Jail in accordance with the provisions of Alabama law. *See* Ala. Code § 14-6-40 (1995). Petitioner did not separately or independently undertake the operation of the jail food money account with the intent to make a profit, but rather she was specifically obligated to do so in her position as sheriff. Conversely, petitioner would have not been able to operate the jail food money account but for the fact that she was sheriff. The activity was inextricably connected with her position. Although petitioner could potentially have profited from the efficient operation of the account, it is not uncommon for an employee to receive a bonus or other additional compensation for successful discharge of her duty.

Moreover, petitioner did not treat the operation of the jail food money account as a separate trade or business. She did not report gross

**[\*16]** receipts from the State of Alabama or any other entity and did not report expenses other than the legal and professional services expense. She did not hire employees but relied on the work of the inmates or her own staff in the Morgan County Sheriff's office.

Accordingly, the Court finds that petitioner was not engaged in the trade or business of operating the jail food money account during 2018. Rather, she did so in the course of her employment as Sheriff of Morgan County. Respondent's characterization of the $44,967 as "other income" rather than gross receipts from a trade or business is therefore sustained.

C.    *Expense Deductions*

On Schedule C, petitioner reported "Legal and professional services" expenses totaling $44,967. The parties agree that petitioner paid $10,867 to an accounting firm for the preparation of her personal federal tax return for tax year 2017, as well as amending certain other federal and state tax returns, bookkeeping for the jail food account, handling a teleconference with the Alabama Department of Revenue, and testimony before a grand jury; and $34,100 to two law firms in connection with her criminal conviction.

Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred during a taxable year in carrying on a trade or business. Generally, the performance of services as an employee may constitute a "trade or business." *O'Malley v. Commissioner*, 91 T.C. 352, 363–64 (1988); *Primuth v. Commissioner*, 54 T.C. 374, 377 (1970). No deduction is allowed for personal, living, or family expenses. § 262.

A deduction under section 162(a), 167(a), or 179 is a miscellaneous itemized deduction if it is related to the business of performing services as an employee. §§ 67(b), 63(d), 62(a). A deduction under section 162(a), 167(a), or 179 is not a miscellaneous itemized deduction if it is related to a business other than performing services as an employee. §§ 67(b), 63(d), 62(a)(1).

Section 67(a) provides that miscellaneous itemized deductions are allowed only to the extent that the total amount of such deductions exceeds 2% of adjusted gross income. In 2017, however, Congress enacted section 67(g), suspending miscellaneous itemized deductions for tax years 2018 through 2025.

**[\*17]** The Court has found that petitioner's operation of the jail food account during 2018 was not a trade or business but part of her duties as Sheriff of Morgan County, an employee of the Morgan County Commission. With respect to the payments to the law firms, as well as the payments to the accounting firm related to grand jury testimony, the Court need not decide whether the legal claim was inherently personal or arose in connection with petitioner's status as an employee of the Morgan County Commission, because the expenses would not be deductible under either circumstance.

Nor is petitioner entitled to a deduction for the tax return preparation expenses. The tax returns prepared by the accounting firm were petitioner's individual income tax returns, and not returns related to any trade or business. In the case of an individual, section 212(3) generally allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in connection with the determination, collection, or refund of any tax. The deduction allowed under section 212(3) is a miscellaneous itemized deduction, *see, e.g.*, *Crouch v. Commissioner*, T.C. Memo. 1995-289, and is likewise suspended for the 2018 tax year pursuant to section 67(g).

III. *Conclusion*

For the foregoing reasons, petitioner's withdrawal of $155,000 from the jail food money account is not included in petitioner's 2015 gross income, and petitioner is not entitled to an NOL carryback for that year. To the extent that any underpayment exists for 2015, petitioner is liable for an addition to tax pursuant to section 6651(a)(1). Petitioner's receipt of $44,967 in 2018 is properly characterized as "other income" and not gross income from a trade or business. Respondent's disallowance of the deduction claimed for legal and professional services expense is sustained.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*